[No. E012513. Fourth Dist., Div Two. June 9, 1995.]

SUSAN OLIVA et al., Plaintiffs and Appellants, v.
PEGGY HEATH et al., Defendants and Respondents.

927

COUNSEL

Hutton & Torchia and Michael J. Torchia for Plaintiffs and Appellants.

H. Vincent McNally for Defendants and Respondents.

OPINION

HOLLENHORST, J.—Plaintiff Susan Oliva's coworkers became defendants by injuring her in a prank at work. The coworkers filed a motion for summary judgment, contending the action was barred by the general rule that workers' compensation is plaintiff's exclusive remedy (Lab. Code, § 3601[1]). The trial court agreed and granted the summary judgment motion. Contending that pranks cannot be within the scope of the coworkers'

---

[1]Unless otherwise indicated, all further statutory references are to the Labor Code.

employment under section 3601, plaintiff appeals.[2] We reject the contention and affirm the judgment.

## UNDISPUTED FACTS

Plaintiff was employed as a cashier at the First Financial Federal Credit Union on February 13, 1986. Defendants Heath, Hayward and Walter were her coemployees. According to plaintiff, she arrived at work at 1:30 p.m. and attempted to sit in her desk chair. The chair had been lowered from its normal height, and plaintiff "fell into [the] chair, rather abruptly," injuring her back.[3] Defendant Heath admitted she lowered the chair an inch as a prank.

The parties agree that plaintiff's injuries were compensable under section 3600 because they arose out of and were sustained in the course of her employment. Plaintiff subsequently received workers' compensation benefits for her injuries.

## STATUTORY BACKGROUND

Section 3600 defines the conditions of compensability under the workers' compensation law. Generally, it provides that an employer is liable, without regard for negligence, for injuries sustained by an employee arising out of and in the course of the employment.

Section 3601 provides that, when the conditions of compensability stated in section 3600 exist, workers' compensation is the exclusive remedy "against any other employee of the employer acting within the scope of his or her employment," except for cases of willful and unprovoked physical acts of aggression by the coworker or injuries caused by the intoxication of the coworker.[4]

Section 3852 preserves the employee's right of action against "any person other than the employer." It also provides that the employer may recover against the third person.

---

[2]Plaintiff's husband joined in the suit and asserted a loss of consortium claim. All references to plaintiff are to Mrs. Oliva.

[3]Plaintiff previously had back surgery in December 1984.

[4]The difference between horseplay and an altercation is that horseplay is characterized by an absence of animosity. (*Argonaut Ins. Co.* v. *Workmen's Comp. App. Bd.* (1967) 247 Cal.App.2d 669, 682 [55 Cal.Rptr. 810]; 1 Hanna, Cal. Law of Employee Injuries and Workers' Compensation (rev. 2d ed. 1994) § 4.51[3][a], p. 4-62.) There was no animosity in the pranks here.

## CASE BACKGROUND

In *Saala* v. *McFarland* (1965) 63 Cal.2d 124 [45 Cal.Rptr. 144, 403 P.2d 400], our Supreme Court distinguished between the terms "arising out of and in the course of the employment" (§ 3600) and "scope of employment" (§ 3601). In that case, two employees had an automobile accident in the employer's parking lot. The court held that prior to the 1959 amendments to section 3601, the right of an employee to sue a coworker for injuries negligently inflicted by the coemployee on the job was preserved by section 3852. (63 Cal.2d at p. 127.) The 1959 amendments protected the coemployee from suit whenever the coemployee's activities were within the scope of employment. (*Id.*, at p. 128.) Since the coworker was not acting within the scope of employment (i.e., was not serving the interests of the employer) in driving from the parking lot, the coworker was not protected from a negligence suit.

*McIvor* v. *Savage* (1963) 220 Cal.App.2d 128 [33 Cal.Rptr. 740] also involved an automobile accident between two employees in a company parking lot. Plaintiff had received workers' compensation benefits for her injuries. The court stated that the determination of whether a coworker was acting within the scope of employment under section 3601 depends upon an analysis of a number of factors, including many factors other than the time and place of the performance of duties as an employee. (220 Cal.App.2d at pp. 136-137.) The court described these factors as follows: "whether [the coworkers'] conduct was authorized by [the] employer, either expressly or impliedly [citation]; the nature of the employment, its object and the duties imposed thereby; whether the employee was acting in the discharge thereof [citation]; whether [the coworkers'] conduct occurred during the performance of services for the benefit of the employer, either directly or indirectly, or [for the benefit of the coworker], or of another person [citations]; whether [the coworkers'] conduct, even though not expressly or impliedly authorized, was an incidental event connected with [the coworkers'] assigned work . . . ." (*Id.*, at p. 136.)

The court also held that the phrase "scope of his [or her] employment" as used in section 3601 characterizes the act which was the cause of the injury. (*McIvor* v. *Savage*, *supra*, 220 Cal.App.2d 128, 137.) Accordingly, the court held summary judgment improper there because the affidavits did not allege facts from which it could be concluded as a matter of law that defendants were not acting in the scope of their employment at the time of the accident. Thus, in this context, the definition of "scope of his or her employment" under section 3601 was basically a factual rather than legal issue. (220 Cal.App.2d at pp. 138-139.)

## THE TRIAL COURT'S DECISION

The trial court, considering the above factors, initially denied the motion for summary judgment. It found that, although the defense declarations were sufficient to support a finding that defendants were acting within the scope of employment, the plaintiff's declarations sufficiently contradicted the defendants' declarations to create a triable issue of fact. The trial court specifically focused on the lack of independent evidence as to whether the pranks were conduct in the normal course of the credit union's business.

Faced with this ruling, defense counsel suggested that defendants take a deposition of the employer on this issue and then supplement the motion with the deposition. The court agreed this could be a useful procedure. Defendants then took the deposition of a supervising employee that strongly supported the contention that pranks and practical jokes were condoned and encouraged by management to promote morale and camaraderie among the employees. The deposition was filed and the summary judgment motion was reheard.

The trial court considered the supervisor's deposition and found that there were no material factual issues, and the legal issue presented by the undisputed facts was whether defendants were acting within the scope of their employment under section 3601. Since pranks and practical jokes were condoned and encouraged by management, the trial court found that defendants were acting within the scope of their employment under section 3601. Accordingly, it granted the motion for summary judgment.

## DISCUSSION

■ Plaintiff contends the trial court erred because (1) factual issues existed which defeat summary judgment and (2) the trial court erred in its determination of the scope of employment issue.

The disputed issue of fact asserted by plaintiff is "whether or not office jokes or pranks were ubiquitous, and whether the injured employee, Susan, participated in or knew of said jokes or pranks . . . ." Plaintiff refers to her supplemental declaration in which she states that "[o]ur employer did not authorize us to perform these practical jokes. Further, I do not believe that our employer condoned these practical jokes." She also stated: "I do not recall that I had ever participated in said practical jokes. Moreover, said jokes were not commonplace in our office." These statements contradicted defendants' declarations and the supervisor's deposition testimony. However, plaintiff also testified in her deposition that she was aware of other incidents in the office involving such pranks as taping desk drawers shut.

The first issue is whether these contradictions create material factual issues which render summary judgment improper. We agree with the trial court that they did not. Plaintiff's declaration and deposition testimony only state her knowledge on the questions of whether the jokes and pranks were common and whether they were condoned by management. Since plaintiff only worked part time in the afternoons, she would not witness practical jokes in the mornings, and she would not necessarily be aware of the participation of supervisors in those incidents.

The question of whether practical jokes were condoned by management was unequivocally answered by a company supervisor who testified in his deposition that he encouraged such activities as a means of building morale.

We agree with the trial court that no material factual issues were raised by plaintiff's declarations or deposition testimony that she was unaware of such approval by management. Whether or not plaintiff knew such activities were condoned by management, the unequivocal testimony is that they were condoned. Plaintiff produced no contrary third person evidence sufficient to raise a factual issue regarding condonation. We therefore find that the trial court did not err in concluding that there were no material factual issues sufficient to defeat summary judgment. (*Munyon* v. *Ole's, Inc.* (1982) 136 Cal.App.3d 697, 700-701 [186 Cal.Rptr. 424]; *Vellis* v. *Albertson* (1968) 267 Cal.App.2d 285, 292 [72 Cal.Rptr. 841].)

Plaintiff's second contention is that the trial court nevertheless erred in making the legal decision that pranks and practical jokes are within the scope of employment under section 3601. In addition to the *Saala* and *McIvor* cases discussed above, plaintiff cites *Hendy* v. *Losse* (1991) 54 Cal.3d 723 [1 Cal.Rptr.2d 543, 819 P.2d 1].

*Hendy* also discussed the 1959 amendments to section 3601 and followed *Saala*, holding that the limited immunity of section 3601 "protects employees from damage actions by coemployees, but only if the defendant was acting within the scope of employment when that defendant's conduct injured the plaintiff." (*Hendy* v. *Losse, supra,* 54 Cal.3d 723, 734.) The court then discussed dual capacity issues present in that case under section 3602 and reaffirmed that section 3601 "expressly immunizes coemployees for acts within the scope of employment." (*Hendy, supra,* at p. 738.) The court noted the two specific exceptions to coemployee liability in section 3601 and held that the 1982 amendments to section 3601 expressly (by inserting the clause "except as specifically provided in this section") added a "restriction on nonstatutory exceptions to the exclusive remedy rule applicable to coemployees." (54 Cal.3d at p. 738.) Accordingly, the court held that "[t]he 1982

amendment of section 3601 confirms . . . the legislative intent that there be no judicially created exceptions to the immunity that has been granted to coemployees. [¶] . . . . The statute is clear . . . . If one employee is acting within the scope of employment at the time the employee injures another employee, workers' compensation is the injured employee's exclusive remedy against the coemployee." (*Id.*, at p. 739.) Finally, the court held that the services provided by defendant, the team physician for a professional football team, were within the scope of his employment and thus workers' compensation was the exclusive remedy. (*Id.*, at pp. 740-742.)

*Hendy* thus does not aid plaintiff. If pranks and practical jokes are within the scope of employment, plaintiff's exclusive remedy is provided by the workers' compensation laws.

However, plaintiff contends that pranks and practical jokes are not within the scope of employment because "it cannot be seriously argued that such conduct [practical joking] is beneficial to one's employer."

Defendants make just such an argument, asserting that the conduct benefitted the employer. They primarily rest on the deposition testimony that strongly stated the supervisor's belief that jokes or pranks were beneficial to the employer because they promoted harmonious working conditions. They therefore argue that "[defendants] were acting within the scope of their employment when they played certain jokes or pranks on Oliva because a 'condoned' activity is considered a hazard associated with employment."

Defendants' latter argument rests on the cases regarding the compensability of horseplay under section 3600. Those cases generally state that participants in horseplay are generally not entitled to workers' compensation. However, injuries to a nonparticipating employee resulting from a coworker's horseplay are compensable. (*Pacific Emp. Ins. Co. v. Ind. Acc. Com.* (1945) 26 Cal.2d 286 [158 P.2d 9, 159 A.L.R. 313]; 1 Hanna, Cal. Law of Employee Injuries and Workers' Compensation, *supra*, § 4.51[3][b], p. 4-63.) Injuries to both participating and nonparticipating employees are within the course and scope of employment when the employer knows of the horseplay and condones it (*Argonaut Ins. Co. v. Workmen's Comp. App. Bd.*, *supra*, 247 Cal.App.2d 669, 681; 1 Hanna, *op. cit. supra*, § 4.51[3][c][ii], p. 4-64 ).

Thus, in *Hodges v. Workers' Comp. Appeals Bd.* (1978) 82 Cal.App.3d 894 [147 Cal.Rptr. 546], this court considered injuries arising from horseplay and applied the general rule that injuries to participants are not compensable. (*Id.*, at p. 899.) We also found the condonation exception inapplicable under the facts of that case. (*Id.*, at pp. 903-904.)

Defendants conclude that the pranks and practical jokes here were within the scope of employment under section 3601 because plaintiff was a non-participant and because the employer condoned the pranks and practical jokes. They note that the Workers' Compensation Appeals Board agreed that the injuries to plaintiff were compensable under section 3600 because she actually received workers' compensation benefits for her injuries.

Defendants ignore the differences between the application of the foregoing cases to determine compensability under section 3600 and the situation here. The cases address the question of compensability for the employee's injuries under the "arising out of and in the course of the employment" rule of section 3600. None of the foregoing cases address the issue of the liability of a coworker for horseplay under the "scope of employment" rule of section 3601.

We have found no direct case authority on this issue. However, even though the *Saala* and *McIvor* cases relied on by plaintiff define the term "scope of his or her employment" under section 3601 more narrowly than the term "arising out of and in the course of the employment" under section 3600, and differentiate between the two terms, we find no reason why different horseplay rules should apply under the two sections. (Cf. *Church* v. *Arko* (1977) 75 Cal.App.3d 291 [142 Cal.Rptr. 92].) We thus agree with defendants that the horseplay cases under section 3600 are relevant to the scope of employment test under section 3601.

We therefore hold that the horseplay cases used to determine compensability under section 3600 are equally applicable to determination of whether pranks and practical jokes were within the coworkers' "scope of his or her employment" under section 3601.

Accepting the relevancy of the horseplay cases, we are led to the conclusion that defendants were acting within the scope of their employment. Under the section 3600 cases, horseplay which is specifically condoned by the employer is compensable. Since the pranks and practical jokes here were specifically condoned by the employer, they were within the coworkers' scope of employment under section 3601. Since the condoned pranks and practical jokes were within the scope of defendants' employment, and the specific exceptions of section 3601 are inapplicable, the coworkers are immune from negligence liability.

In addition to the result that follows from the application of the horseplay cases to the "scope of his or her employment" rule under section 3601, the general principles of section 3601 lead to the same conclusion. *Hendy*

defines "scope of employment" under section 3601 by quoting *Saala*: " ' "Conduct is within the scope of employment only if the servant is actuated to some extent by an intent to serve his master." ' " (*Hendy* v. *Losse*, *supra*, 54 Cal.3d 723, 740.) It goes on to say: "Approaching the question from another perspective, a coemployee's conduct is within the scope of his or her employment if it could be imputed to the employer under the doctrine of respondeat superior. If the coemployee was not 'engaged in any active service for the employer,' the coemployee was not acting within the scope of employment." (*Ibid.*) The test applied to the team physician in that case was whether the doctor stepped out of his coemployee role when he treated plaintiff. The court held he did not because he was doing exactly what he was employed to do, i.e., treat injured team members. (*Ibid.*)

In other words, ". . . an injured worker cannot recover damages from a coemployee if the employer would have been liable for the coemployee's tort had the injured person not also been an employee." (Peyrat, Cal. Workers' Damages Practice (Cont.Ed.Bar 1985) § 3.35, p. 68.) Under this test, we think it clear that the injury resulted from a risk created by the employer when it urged its employees to engage in pranks and practical jokes. "Had the injured person been a stranger rather than a coemployee, there would be little doubt that the employer could have been held vicariously liable for defendant's conduct." (*Brittell* v. *Young* (1979) 90 Cal.App.3d 400, 407 [153 Cal.Rptr. 387]; *Harris* v. *Trojan Fireworks Co.* (1981) 120 Cal.App.3d 157, 163-164 [174 Cal.Rptr. 452]; see also Civ. Code, § 2338.[5]) Application of the respondeat superior test therefore indicates that the acts of the coworkers were within the scope of their employment. The strong testimony of the supervisor that pranks and practical jokes in the office were encouraged to aid employee morale suggests that the defendant employees here were doing what the employer wanted them to do, and were serving the employer's interests in carrying out pranks and practical jokes. (Cf. *Vellis* v. *Albertson*, *supra*, 267 Cal.App.2d 285 [giving a coworker a ride on a tractor was within the scope of employment because it indirectly benefitted the employer in creating a harmonious relationship among the employees].)

Thus defendants are immune from negligence liability under both the specific horseplay cases and general application of the respondeat superior rule.

---

[5]Section 2338 provides: "Unless required by or under the authority of law to employ that particular agent, a principal is responsible to third persons for the negligence of his agent in the transaction of the business of the agency, including wrongful acts committed by such agent in and as a part of the transaction of such business, and for his willful omission to fulfill the obligations of the principal."

## DISPOSITION

The judgment is affirmed.

Dabney, Acting P. J., and McKinster, J., concurred.